NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 20 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TAMMATHA J. CARRIER,

            Plaintiff-Appellant,

    v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

            Respondent-Appellee.

No.    22-35999

D.C. No. 1:21-cv-00185-DKG

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Idaho
Debora K. Grasham, Magistrate Judge, Presiding

Argued and Submitted October 3, 2023
Seattle, Washington

Before:  WARDLAW and M. SMITH, Circuit Judges, and HINKLE,[**] District
Judge.

    Tammatha Carrier appeals the district court's order upholding the

Commissioner's denial of her application for disability insurance benefits under

Title II of the Social Security Act.  We review the district court's order de novo

---

        [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        [**]    The Honorable Robert L. Hinkle, United States District Judge for the
Northern District of Florida, sitting by designation.

and may reverse only if the Administrative Law Judge's decision relied on legal error or was not supported by substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). We reverse and remand for further proceedings because the ALJ failed to properly evaluate Ms. Carrier's treating physician's opinion, Ms. Carrier's testimony, and the statements of third parties.

1. The ALJ erred in affording treating physician Dr. Marsh's opinion little weight. For claims filed before March 27, 2017, such as here, the opinion of a treating physician is generally entitled to controlling weight. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *see also* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighed according to other factors set out by rule, including the length of the treatment relationship, frequency of examination, supportability, consistency, and specialization of the physician. *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 404.1527(c)(2)–(6). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject the treating physician's opinion only by providing specific and legitimate reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 675.

The ALJ gave the opinion of Dr. Marsh, a treating physician, little weight because it was rendered outside the period under consideration, purportedly lacked support in Dr. Marsh's own examination findings, and was purportedly inconsistent with Ms. Carrier's activities of daily living. Each of these reasons was

2

erroneous.

First, timing provides no basis to reject Dr. Marsh's opinion. Ms. Carrier sought benefits for the period from December 13, 2012, to September 30, 2017. Dr. Marsh treated Ms. Carrier beginning in May 2016, so for more than a year of the coverage period and continuing thereafter. Dr. Marsh provided the opinions at issue in connection with the application for benefits as it was being adjudicated— after the coverage period—but the opinions were based on and addressed treatment that occurred *during* the coverage period. Further, one of the non-treating physician opinions to which the ALJ assigned great weight also was rendered outside the coverage period.

Second, Dr. Marsh's examination findings, read in context, do not provide a basis to discredit his opinion. In concluding otherwise, the ALJ cited selected records from June 2017 to November 2017 where Dr. Marsh found Ms. Carrier alert and oriented with a normal gait. But this ignores the majority of Dr. Marsh's treatment notes, which show Ms. Carrier suffered substantial pain and limitations from prior injuries—that she was exhausted and had little energy because she could not sleep, that this was limiting, that she had migraines, that her pain was so severe it sometimes made her vomit, that sometimes she could barely move, and that, in general, she was not doing well or making good progress. And the notes show Dr. Marsh consistently found Mr. Carrier had weak toe walking on the left

3

and appeared depressed. The ALJ failed to consider all of Dr. Marsh's notes in context. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)

Third, the record regarding Ms. Carrier's activities of daily living does not provide a legitimate basis to discredit Dr. Marsh's opinion. Citing specific pages of the record, the ALJ found that Ms. Carrier told her medical providers that, as summarized by the Commissioner, she could "prepare meals, walk on a treadmill, weed her garden, care for her pets, travel from Idaho to Seattle, attend parties, and walk to get around." But this mischaracterizes what the cited pages—not to mention the rest of the record—actually show.

For preparing meals, the cited page includes Ms. Carrier's statement that she tried to prepare dinner for her husband—but also that she suffered severe neck pain and resulting nausea and was unable to do household chores. Another cited page reported that cooking "seem[ed] to aggravate her low back a lot." Other evidence showed she prepared only simple meals and only with difficulty.

For walking on treadmills, the cited page shows she attempted to walk on a treadmill in April 2013 as part of a rehabilitation program, experienced numbness down her leg, and was told to stop. The record shows no use of a treadmill after that.

For weeding, the cited page shows that in the week before a medical appointment, Mr. Carrier was "trying" to do some gardening but "suffered some

4

setbacks with her back." As a result, at the time of the appointment Ms. Carrier was "struggling with spasms and increased pain."

For travel from Idaho to Seattle, the cited page shows Ms. Carrier "had" to make the trip, that it was "tough," and that her medication—including an opiate—was "barely helping." At the appointment where this was discussed, Ms. Carrier's neck pain was severe and she was sick to the point of nausea because of it.

For parties, the cited page shows Ms. Carrier attended a single party, during which she had to go to a secluded corner to pop her back into alignment, and was embarrassed.

In short, the record does not support the ALJ's characterization of Ms. Carrier's "robust" activities of daily living. Taken together, the reasons the ALJ gave for discrediting Dr. Marsh's opinions do not withstand analysis. In addition, the ALJ failed to address other pertinent factors, including the length of the treating relationship, frequency of examination, nature and extent of the treatment relationship, and Dr. Marsh's specialty. As in *Trevizo*, "[t]his failure alone constitutes reversible legal error." 871 F.3d at 676.

2. The ALJ erred in discrediting Ms. Carrier's testimony on the severity of her symptoms and impairments. We have established a two-step analysis for determining the extent to which a claimant's testimony about symptoms—including, as relevant here, pain, fatigue, and migraines—must be credited. *See id.*

5

at 678. The ALJ determined that Ms. Carrier satisfied the first step: she presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject a claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *Id.* An ALJ is not required to believe every allegation of symptoms. *Orn v. Asture*, 495 F.3d 625, 635 (9th Cir. 2007). But an ALJ errs in rejecting claimant symptom testimony where, as here, the ALJ fails to consider the record as a whole or selectively quotes and misstates the record. *See Trevizo*, 871 F.3d at 680; *Garrison v. Colvin*, 759 F.3d 995, 1015–16 (9th Cir. 2014).

The ALJ did not credit Ms. Carrier's testimony on the severity of her symptoms or her impairments, selectively citing some treatment notes to reach this conclusion. But the overall diagnostic record is consistent with Ms. Carrier's testimony. Further, the notes cited by the ALJ do not directly address Ms. Carrier's symptom testimony. For example, the ALJ found Ms. Carrier had a normal gait and was alert. This does not address or contradict Ms. Carrier's testimony that she experiences debilitating migraines and neck pain. Thus, the ALJ mischaracterized the record of her daily activities, set out above. Finally, the ALJ did not address how Ms. Carrier's limited activities were transferrable to a workplace. *See Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that

6

"sporadic" activities "punctuated with rest" did not undermine the claimant's symptom testimony).

3. The ALJ erred in discounting the third-party statements of Ms. Carrier's family and friends. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). An ALJ may reject lay witness testimony only upon giving a reason germane to the specific witness. *Dodrill*, 12 F.3d at 919.

Ms. Carrier's husband testified about her activities and symptoms. Other friends and family members submitted letters regarding the same. The ALJ gave little weight to this evidence because the witnesses had no medical training, were not disinterested, and their statements were inconsistent with Ms. Carrier's activities of daily living. The first reason was not germane to the witnesses, who did not claim to be medical experts or offer medical opinions. *See Dodrill*, 12 F.3d at 918–19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). The second reason was too broad and inadequate under our case law. *See, e.g.,* *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The last reason relied on the same mischaracterization of Ms. Carrier's activities of daily

7

living noted above.

If the ALJ were to credit Ms. Carrier's testimony, Dr. Marsh's opinion, and the third-party testimony, the ALJ could find Ms. Carrier wholly disabled. We thus vacate the judgment of the district court and remand with instructions to remand to the agency for further proceedings consistent with this decision.

**REVERSED and REMANDED.**